UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERIC HESSE and GREG WALINSKI )<br>      Plaintiffs, )<br>)<br>v. )<br>)<br>GLOUCESTER FISH EXCHANGE, INC. d/b/a )<br>GLOUCESTER SEAFOOD DISPLAY AUCTION, )<br>      Defendants. ) | CIVIL ACTION<br>NO.: |

## COMPLAINT

Plaintiffs, Eric Hesse and Greg Walinski (together "Plaintiffs"), file this action against Defendant, Gloucester Fish Exchange, Inc. d/b/a Gloucester Seafood Display Auction. Plaintiffs' allegations are based upon personal knowledge when pertaining to themselves and upon information and belief based on their investigation and research and publicly available materials, as to all other facts alleged in the Complaint.

## NATURE OF THE ACTION

1. This is an action for damages as a result of a breach of a maritime contract brought by Plaintiffs who have been landing their catch at the Defendant's facility since 2005.

2. Defendant, alone or in conspiracy with others, planned and operated an unfair and deceptive scheme to off load and sell the Plaintiffs' catch at market rates to third parties and then misrepresent the value to the Plaintiffs, in essence skimming from the Plaintiffs' share of the sale price.

3. Defendants designed and operated (and continue to operate) this scheme for at least the past six (6) years, generating revenue for itself and unknown losses for the Plaintiffs.

4. Plaintiffs' allege Defendant's scheme is a breach of a maritime contract and violates Massachusetts consumer protection laws, and an accounting.

## THE PARTIES

5. Plaintiff, Eric Hesse is an individual who resides at 53 Meadow Lane West Barnstable, Massachusetts.  Mr. Hesse is the owner of a commercial fishing boat called the F/V TENACIOUS II that sells its catch through the Defendant's facility.

6. Plaintiff, Greg Walinski is an individual who resides at 43 North Street Dennisport, Massachusetts.  Mr. Walinski is the owner of a commercial fishing boat called the F/V ALICIA MAY that sells its catch through the Defendant's facility.

7. Defendant, Gloucester Fish Exchange, Inc. doing business as Gloucester Seafood Display Auction ("GSDA") is a Massachusetts corporation with a principal office located at 27-29 Harbor Loop, Gloucester, Massachusetts.

## JURISDICTION

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1333.  The Court has supplemental jurisdiction over the Plaintiff's common law claims pursuant to 28 U.S.C. §1367.

9. Venue is proper in this district.  The Defendant reside in this district and a substantial part of the events alleged in this Complaint giving rise to Plaintiffs' claims occurred in and were directed from this district.

## FACTUAL ALLEGATIONS

**GSDA Background**

10. GSDA was established in 1997.

11. GSDA styles itself as the premier unloading facility and auction for the port of Gloucester, Cape Cod, the outer Islands, Rhode Island, New Hampshire and Maine.

12. The GSDA auction advertises that it provides buyers and sellers a fair venue to market, sell and buy product.

13. GSDA also advertises that it provides traceability for the vessel owner to be identified with quality.

**The Landing Process and Services**

14. GSDA employees manually cull the catch separating each product according to species and size, weighed, boxed, iced, labeled with a unique lot number outlining the vessels name, landing date, species, size and weight for traceability and accountability.  The boxes are immediately placed in the display cooler for viewing.

15. GSDA provides pick up and delivery from other designated ports around Cape Cod, New Hampshire, Maine and Rhode Island.

16. All vessels that unload with GSDA or truck their product will have their catch sold on auction the following auction morning (Monday thru Friday).

**The Auction Process**

17. GSDA has real time internet seafood auctions that are held Monday through Friday starting at 6am.

18. GSDA's internet bidding system allows remote bidders to follow a live sale and to participate in the bidding.  The auction principle has been developed by the falling/rising bid method.

19. The bidders bid against each other until the highest bid is won by use of their pc's space bar.  Unless otherwise specified by the seller the Auctioneer will confirm this lot and continue to the next lot.

20. Vessel owners' like the Plaintiffs, can chose to move their unsold product by putting it back on the auction for the following day's sale or sell the item in a secondary market.

21. At the end of the auction the GSDA confirms all sales.

22. GSDA advertises that buyers have immediate access of their sale transactions and reports through the database which include prices, averages, purchase, etc.

23. GSDA also advertises that vessel owners, like the Plaintiffs, invoices are printed and checks available as soon as 48 hours.

24. Vessel owners, like the Plaintiffs, give their catch on consignment to GSDA.

**Plaintiffs' Transactions with Defendants**

25. Plaintiff Hesse owns and operates a commercial fishing boat.

26. Plaintiff Walinski owns and operates a commercial fishing boat.

27. Both Plaintiffs broker their catch through GSDA.

28. Prior to 2005, GSDA high and low bid prices were posted on the internet within hours of the auction each day; results were faxed to participating dealers listing prices paid to every vessel; and vessel owners could obtain price information from any auction employee over the telephone. Vessel settlement sheets and checks were sent to vessel owners via U.S. Mail within a week after the auction.

29. In 2005, the transparent nature of GSDA began to change. If a vessel owner was not physically present at the time of the auction, he would be referred to Larry Ciulla, owner/manger, for prices and results. Price information for a specific vessel was not available on request and often would not be given until after a one day delay. Settlement sheets and checks were sent via U.S. Mail approximately one month after the auction date.

30. On November 17, 2010, Plaintiff Hesse learned that a purchaser of fish at GSDA bought his fish on November 16, 2010. The rate paid by said purchaser to GSDA was $2.53/lb for large haddock, $2.26/lb large cod, and $2.06/lb for market cod. These prices included the ten cents

per pound purchaser fee paid to the auction. This translated to a ten cent reduction per pound paid to Plaintiff Hesse for that catch.

31. Plaintiff Hesse received his settlement sheet and check via U.S. Mail almost three weeks later to find the prices listed for fish bought by that purchaser as $2.19-2.29/lb for large haddock, $1.94/lb large cod, and $1.76/lb for market cod.

32. As a result of this large discrepancy and a dissatisfaction of the lack of transparency at the auction, the Plaintiffs approached several other purchasers with dates of several trips taken in 2009 and 2010.

33. After being provided with various results for the catch purchased, the Plaintiffs found that the sales price reported on their settlement sheets had been reduced by an additional six to thirty-two cents per pound on every trip throughout the period, in addition to stated fees for vessel offloading and auction sales.

34. The Plaintiffs have formally requested a full accounting for their catch for the past six years.

35. The Defendant refuses to provide such information.

36. The truth of GSDF's deceptive operation alleged in this Complaint were deliberately concealed by the Defendant from the Plaintiffs. The GSDF is not a publicly held or a not-for-profit corporation further limiting the information available to the Plaintiffs.

37. The Defendant had a duty to disclose the true value of the catch sold at auction and furnish honest records. Notwithstanding this duty, Defendant has never disclosed the actual sale price as compared to what was paid based upon poundage to the Plaintiffs.

38. As demonstrated by the allegations in the Complaint, Defendant has employed and continues to employ practices and techniques of secrecy to avoid detection of and to conceal their conduct by hiding the auction information.

39. The Defendant successfully concealed from Plaintiffs facts sufficient to excite suspicion of claims against Defendant arising from their deception.

40. The information that Plaintiffs required to discover these claims and to prosecute this Complaint is under Defendants' exclusive control.

## COUNT I

41. Plaintiffs reasserts and realleges paragraphs 1 through 40 as if fully set forth herein.

42. The Plaintiffs have a valid maritime contract with the Defendant to offload and broker the Plaintiffs' fish for sale.

43. The proceeds of the sale of the fish pay for the vessel operation and the crew wages.

44. The Defendant breached its contract with the Plaintiffs by reducing the purchase price per pound by more than the purchaser's fee paid to the auction in values ranging from at least six cents to thirty two cents per pound of fish offloaded and sold.

45. As a direct result of this breach, the Plaintiffs have not been properly paid as agreed.

46. As a result of the Defendant's breach, the Plaintiffs have been significantly damaged as will be determined at trial.

## COUNT II

47. Plaintiffs reassert and reallege paragraphs 1 through 46 as if fully set forth herein.

48. A dispute has arisen between Plaintiffs and Defendant concerning the amount due to the Plaintiffs from the Defendant and the amounts charged by Defendant to Plaintiff, over at least the period of September 1, 2005 to the present.

49. In order that this dispute may be resolved in an orderly fashion, Plaintiffs request that this Honorable Court order that an accounting take place to determine the rights and obligations of both Plaintiffs and Defendant.

## COUNT III

50. Plaintiffs reassert and reallege Paragraphs 1 through 49 as if fully set forth herein.

51. Defendant's failure and refusal to provide an accounting, to no longer conduct business in a transparent fashion as advertised, to unfairly and deceptively take a portion of the purchase prices of fish as well as the other deceptive trade practices discussed above constitutes an unfair and deceptive trade or business practice in violation of the provisions of Massachusetts General Laws, Chapter 93A, which has caused the Plaintiffs to suffer damages that will be demonstrated at trial.

WHEREFORE, the Plaintiffs' pray for the following relief:

1. Plaintiff Hesse prays that this Honorable Court finds that the Defendant beached its maritime contract and award the Plaintiff all damages that Hesse is due.;

2. Plaintiff Walinski prays that this Honorable Court finds that the Defendant breached its maritime contract and award the Plaintiff all damages that Walinski is due;

3. Plaintiff Hesse prays that this Honorable Court order a full accounting of the rights and obligations of the Plaintiff and the Defendant commencing from September 1, 2005 to the present;

4. Plaintiff Walinski prays that this Honorable Court order a full accounting of the rights and obligations of the Plaintiff and the Defendant commencing from September 1, 2005 to the present;

5. Plaintiff Hesse prays that this Honorable Court order the Defendant to pay double or triple damages, attorneys fees and costs;

6. Plaintiff Walinski prays that this Honorable Court order the Defendant to pay double or triple damages, attorneys fees and costs;

7.  Plaintiffs Hesse and Walinski prays that this Honorable Court order any other relief that it deems appropriate.

**PLAINTIFFS DEMAND A TRIAL BY JURY**

Respectfully submitted,
Eric Hesse and Greg Walinski
By their attorney

/s/ David S. Smith
_____
David S. Smith, Esq.
BBO No.: 634865
Ouellette & Smith
127 Eastern Avenue, Suite 1
Gloucester, MA 01930
Tel: 978-281-7788
Fax: 978-281-4411

Date: August 10, 2011